UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
MODIS, INC.,                  )
                              )
          Plaintiff,          )
                              )
          v.                  )        Civil Action No. 09-1051 (RWR)
                              )
INFOTRAN SYSTEMS, INC.,       )
et al.,                       )
                              )
          Defendants.         )
_____)
```

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Modis, Inc. brings this diversity action for damages and injunctive relief against defendants Infotran Systems, Inc. and Tien H. Tran, alleging breach of contract.  The defendants have filed a counterclaim alleging two counts of tortious interference with contractual or business relations.  The parties have filed cross-motions for summary judgment on the defendants' counterclaim.  The defendants have also moved to strike two of Modis's proposed expert witnesses offered to provide evidence solely regarding the counterclaim.  Because the defendants' counterclaim pertains to mere competitive communications, the plaintiff's motion for summary judgment on the defendants' counterclaim will be granted, and the defendants' motion to strike will be denied as moot.

<u>BACKGROUND</u>

Modis is an information technology ("IT") service provider that provides staffing for "complex IT challenges," staffing for

-2-

work on various computer systems and databases, and technical
expertise.  (Compl. ¶¶ 6, 10; Pl.'s Stmt. of Mat. Facts in Supp.
of Mot. for Summ. J. on Defs.' Counterclaim ("Pl.'s Stmt.") ¶ 1.)
Modis contracted with Computer Science Corporation ("CSC") to
provide information technology support to CSC in connection with
CSC's contract to perform work for the United States Citizenship[1]
and Immigration Services ("USCIS").  (Compl. ¶ 6; Pl.'s Stmt.
¶ 3.)  In 2006, Modis enlisted Tran as an independent contractor
at CSC to support the information technology work that CSC was
performing for the USCIS.  Modis required Tran on behalf of his
company, Infotran, to sign an Independent Contractor Agreement
("the Agreement") that restricted the use of confidential
information and that contained a non-compete provision.  Tran
agreed to not solicit business or employment from any client of
Modis, including CSC, or from any entity or person with whom Tran
had personal contact or whom he met while providing services for
CSC without the written consent of Modis "during the term of
[the] Agreement and for a period of one (1) year thereafter[.]"
(Compl. ¶¶ 12-13, 28-30.)  The Agreement provided that if Tran or
Infotran breached the restrictive covenants, Modis would be
entitled to seek injunctive relief as well as a fee equal to

---

[1] The parties appear to have mistakenly used the word
"Customs" rather than "Citizenship" in referring to this agency.

125 percent of the fee that Modis would have earned if it had provided the services.  (Id. ¶ 31.)

In 2008, Timothy Martin, the sales director for Modis' Government Services Group, talked to the defendants about structuring their relationship in a way that allowed the CSC to claim that it was increasing its spending on small business subcontractors.  Martin purportedly said the defendants could enter a direct contractual relationship with CSC for the limited purpose of allowing Modis to provide IT personnel resource services to the defendants to place at CSC.  (Pl.'s Stmt. ¶ 9.) The defendants claim that Martin, on behalf of Modis, waived the contractual provisions containing the bar on the defendants directly contracting with CSC and the non-compete restrictions; the plaintiffs dispute that contention.  (Pl.'s Stmt. ¶ 8, 12.)

In the fall of 2008, Martin discovered from a CSC project manager that the defendants were going to place two employees directly with CSC, without Modis' participation, in positions for which Modis was actively submitting candidates for placement. Martin chose to talk to Tran about the placements instead of initiate litigation to enforce the Agreement.  (Pl.'s Stmt. ¶¶ 14, 16.)  However, in March of 2009, Martin discovered that Tran had contacted a prospective contractor whose resumé Martin had obtained and submitted to CSC to try to place him there. Tran tried to determine the prospective contractor's interest in

-4-

being placed with CSC by the defendants, rather than by Modis.
(Pl.'s Stmt. ¶ 19.)  The plaintiffs sent a letter to Tran
reminding him of the non-compete restrictions in the Agreement.
(Pl.'s Stmt. ¶ 21.)  In May of 2009, the defendants gave Modis a
letter stating that they were terminating their relationship with
Modis.  (Compl. ¶ 34.)

Martin told CSC's program manager that the defendants had
violated the Agreement with Modis and that Modis would
potentially initiate litigation against the defendants.  Martin
asserts that he also asked the program managers to advise him how
the dispute regarding CSC staffing could be resolved without
resorting to litigation.  (Pl.'s Stmt. ¶¶ 22-23.)  Martin
allegedly also tried to convince CSC to use a contractor provided
by Modis instead of Tran.  Martin informed CSC employees that
Modis was about to take legal action against Infotran, that
Infotran lacked the capacity to complete the project for CSC, and
that Modis's resources were superior to Infotran's resources.
Thus, he asked CSC to remove Infotran from the project.
(Counterclaim and Third Party Compl. ("Counterclaim") ¶¶ 69-81.)

In June 2009, Modis filed the one-count breach of contract
complaint in this matter against both defendants, alleging that
the defendants breached the contract and violated the non-compete
restrictions by competing with Modis for placement opportunities
with CSC.  (Compl. ¶ 35.)  After the lawsuit was filed, CSC

refrained from using the defendants to staff projects, both to
mitigate risk and because CSC did not need the defendants'
services.  (Pl.'s Stmt. ¶¶ 25-27.)  CSC fully removed Infotran
from the project in November 2010.  (Pl.'s Stmt. ¶ 30.)  The
defendants were granted leave to file a counterclaim and third
party complaint alleging one claim of tortious interference with
business or contractual relations against Modis (Count I), and
one third-party claim of tortious interference with business or
contractual relations against Martin (Count II).  (Counterclaim
¶¶ 90-122.)

     The parties have filed cross-motions for summary judgment on
the defendants' counterclaim.[2]  In addition, the defendants have

_____

     [2] The defendants have also moved for reconsideration of an
oral order denying their motion for summary judgment on Modis'
complaint.  The reconsideration and amendment of a previous order
is an unusual measure.  Berg v. Obama, 656 F. Supp. 2d 107, 108
(D.D.C. 2009) (citing City of Moundridge v. Exxon Mobil Corp.,
244 F.R.D. 10, 11-12 (D.D.C. 2007)).  "[I]n order to promote
finality, predictability and economy of judicial resources, as a
rule a court should be loathe to revisit its own prior decisions
in the absence of extraordinary circumstances[.]"  Marshall, 598
F. Supp. 2d at 59.  The defendants argue that the plaintiffs are
estopped from raising their breach of contract claim because
Modis consented to the defendants directly contracting with CSC.
However, the defendants made this argument two times previously
- - in their motion for summary judgment on the complaint, and
orally at the hearing where their motion was denied - - and it
was rejected, because there is a factual dispute as to whether
Modis waived, or consented to the breach of, contractual
provisions prohibiting the defendants from contracting with CSC.
(See Defs.' Mem. in Supp. of Mot. for Summ. J. on the Compl. at
11-13.)  "'[W]here litigants have once battled for the court's
decision, they should [not be] . . . permitted[] to battle for it
again.'"  Hoffman v. Dist. of Columbia, 681 F. Supp. 2d 86, 90
(D.D.C. 2010) (quoting Singh v. George Washington Univ., 383 F.
Supp. 2d 99, 101-102 (D.D.C. 2005) (denying motion for

-6-

moved to strike Modis's designation two witnesses to offer expert testimony solely regarding the counterclaim.

## DISCUSSION

"'Summary judgment may be appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.'" Pueschel v. Nat'l Air Traffic Controllers Ass'n, 772 F. Supp. 2d 181, 183 (D.D.C. 2011) (quoting Bonaccorsy v. Dist. of Columbia, 685 F. Supp. 2d 18, 22 (D.D.C. 2010) (citing Fed. R. Civ. P. 56(c))). "'In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant.'" Pueschel, 772 F. Supp. 2d at 183 (quoting Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting

reconsideration, and stating that "the Court considered the cases that the [defendant] now cites" and the "attempt to re-litigate this issue will not be countenanced")).  The defendants' motion will be denied.

-7-

Anderson, 477 U.S. at 250) (rev'd on other grounds by Prime Time
Int'l Co. v. Vilsack, 599 F.3d 678 (D.C. Cir. 2010)).  A genuine
issue is present in a case where the "evidence is such that a
reasonable jury could return a verdict for the non-moving party,"
a situation wholly distinct from a case where the evidence is "so
one-sided that one party must prevail as a matter of law."
Anderson, 477 U.S. at 248, 252.

The defendants' counterclaim alleges two counts of tortious
interference with contractual or business relations under
District of Columbia law, based on Martin and Modis contacting
CSC to inform CSC that Modis was taking legal action against the
defendants for violating the Agreement.  (Counterclaim ¶¶ 69-71,
82.)  The torts of intentional interference with a contract, or
intentional interference with business relations, have the
following elements: (1) the existence of a valid contract,
business relationship or expectancy; (2) knowledge of the
contract, relationship or expectancy on the part of the
interferer; (3) intentional interference inducing or causing a
breach or termination of the relationship or expectancy; and (4)
damage caused by the interference.  Onyeoziri v. Spivok, 44 A.3d
279, 286 (D.C. 2012) (citing Restatement (Second) of Torts,
§ 766, and NCRIC Inc. v. Columbia Hosp. for Women, 957 A.2d 890,
900 (D.C. 2008)); see also Brown v. Carr, 503 A.2d 1241, 1247
(D.C. 1986) (stating that "[t]he tort of intentional interference

-8-

with a prospective business advantage runs parallel to that for interference with existing contracts"). To establish a claim of improper interference with contract or business relations, the plaintiff must demonstrate that the defendant engaged in conduct that is "egregious; for example, it must involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement." Sheppard v. Dickstein, Shapiro, Morin & Oshinsky, 59 F. Supp. 2d 27, 34 (D.D.C. 1999) (dismissing plaintiff's tortious interference claim where the plaintiff's complaint was "silent" as to any statements made by the defendants that constituted slander, libel, or knowing misrepresentations) (internal quotation omitted). The competitive activity that forms the basis of an improper interference claim must be accomplished "by wrongful or improper means, such as fraud." Mercer Mgmt. Consulting v. Wilde, 920 F. Supp. 219, 239 (D.D.C. 1996).

An interfering defendant may avoid liability by showing that its interference was not improper – – in other words, not something beyond mere competitive activity. See Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins, 726 F. Supp. 1, 6 (D.D.C. 1998); see also Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 326 (D.C. 2008) (stating that a defendant may avoid liability if it can establish that it engaged in the interfering conduct in order to protect an existing economic interest). "Lawful competition does not constitute unjustifiable interference." Pampered Chef v.

<u>Alexanian</u>, 804 F. Supp. 2d 765, 807-808 (N.D. Ill. 2011).  "[T]he process known as competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system. Competition is not a tort."  <u>Speakers of Sport, Inc. v. ProServ, Inc.</u>, 178 F.3d 862, 865 (7th Cir. 1999).  As is stated in the Second Restatement of Torts,

> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if:
> (a)  the relation concerns a matter involved in the competition between the actor and the other and
> (b)  the actor does not employ wrongful means and
> (c)  his action does not create or continue an unlawful restraint of trade and
> (d)  his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts, § 768; <u>see also</u> <u>Mardirosian v. American Institute of Architects</u>, 474 F. Supp. 628, 650-51 (D.D.C. 1979) (citing Restatement (Second) of Torts § 768 to demonstrate the existence of the competitor's privilege, stating that "the policy of the common law has always been in favor of free competition"); <u>Mun. Revenue Serv., Inc. v. Xspand, Inc.</u>, 700 F. Supp. 2d 692, 709 (M.D. Pa. 2010) (stating that "[o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor, or not to continue an existing contract terminable at will, does not interfere improperly with the other's relation");

-10-

Compak Cos., LLC v. Johnson, Civil Action No. 03-C-7427, 2011 WL
1654269, at *11-13 (N.D. Ill. Apr. 28, 2011) (entering judgment
for the defendant on the plaintiff's tortious interference claim,
where the defendant's actions, such as contacting the plaintiff's
customers and persuading them to do business with the defendant's
company instead of the plaintiff's by stating that the plaintiff
would soon lack the ability to complete the customers' work, were
shielded from liability by the competitor's privilege).

        Here, the defendants have not shown that the communications
complained of were anything more than competitive activity that
cannot form the basis of a tortious interference claim.  In
addition to providing indirect, speculative evidence of the
impressions that CSC employees had regarding Modis's reaction to
Infotran's behavior, the defendants provide four discrete
statements relevant to their counterclaim that purportedly
constituted the interference: two statements by Martin to CSC's
Application Portfolio Manager - - one, that Modis had character
witnesses that would testify against defendant Tran, and another,
that InfoTran had so severely violated the terms of the Agreement
that Modis was going to try to remove InfoTran from the project;
an angry telephone call from Martin to a CSC project manager to
report that Martin and the defendants had reached an arrangement
for the defendants to use Modis' resources for placement in CSC's
Eagle program; and Martin's statement in an e-mail to a CSC

-11-

operations director that defendant Tran had not lived up to his
expectations or commitments.  (Defs.' Opp'n, at 22-23, 28, Ex. P
at 17; Defs.' Supp. Mem. at 3-9.)

The defendants have not shown that anything in Martin's
communications was slander, libel, knowingly false, or even
untrue.  What Martin is free to allege in this breach of
agreement lawsuit does not become defamation when repeated over
the phone or in a message.  Nor does a CSC project manager's
perception that Martin was angry convert truth to falsehood or
protected competition to unlawful behavior.  While the defendants
argue that stating that a competitor failed to live up to its
expectations or commitments is not competitive communication,
statements differentiating a competitor's prospective ability to
complete a job by discussing that competitor's previous
performance can be the very essence of protected competitive
communication.  Therefore, Modis's motion for summary judgment on
the counterclaim will be granted.[3]

## CONCLUSION AND ORDER

No genuine factual issues exist for a jury's resolution,
assuming the truth of the defendants' factual allegations.  The
communications that form the basis of the defendants'
counterclaims for tortious interference do not rise above the

---

[3] Because judgment will be entered against the defendants'
counterclaim, the defendants' motions to strike the plaintiff's
expert witnesses whose testimony would have pertained to the
counterclaim will be denied as moot.

-12-

level of protective competitive communication.   Therefore, it is
hereby

     ORDERED that the defendants' motions [54, 87] for partial
summary judgment on their counterclaim be, and hereby are,
DENIED, and the plaintiff's motion [58] for judgment on the
defendants' counterclaim be, and hereby is, GRANTED.   Judgment is
entered against the defendants on their counterclaim.   It is
further

     ORDERED that the defendants' motions [47, 77] to strike the
plaintiff's expert witnesses and motion [84] to strike the
plaintiff's reply brief, and the plaintiff's motion [79] to file
a surreply and motion [94] to strike the defendants' supplemental
brief be, and hereby are, DENIED as moot.   It is further

     ORDERED that the defendants' motion [91] for reconsideration
be, and hereby is, DENIED.

     SIGNED this 28th day of September, 2012

                         _____/s/_____
                         RICHARD W. ROBERTS
                         United States District Judge